Filed: 4/29/2024 12:00 AM
Michael Gould
District Clerk
Collin County, Texas
By Kim Sherrin Deputy
Envelope ID: 87139074

CAUSE NO. ___471-02575-2024___

| | | |
|---|---|---|
| **DR. ADAM BENHAM;** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **_____ DISTRICT COURT** |
| | § | |
| **FIVE POINT DENTAL SPECIALISTS,** | § | |
| **INC.; FPDS BENHAM SUB, LLC;** | § | |
| **FPDS BENHAM HOLDCO, LLC** | § | |
| | § | |
| *Defendants.* | § | **COLLIN COUNTY, TEXAS** |

## ORIGINAL PETITION, *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTION

**NOW COMES** Dr. Adam Benham ("Dr. Benham"), and files this, his Original Petition, *Ex Parte* Application for Temporary Restraining Order, and Application for Temporary and Permanent Injunction (the "Petition") against Five Point Dental Specialists, Inc., FPDS Benham Sub, LLC, and FPDS Benham Holdco, LLC (collectively, "Defendants"). In support, Dr. Benham would respectfully show this Honorable Court the following:

## INTRODUCTION

1. The Defendants have intentionally destroyed Dr. Benham's business, reputation, and life. This case is about corporate theft committed by the Defendants on a grand scale.

2. Dr. Benham is a well-respected Orthodontist and premier provider of orthodontics in his community. Because of Dr. Benham's reputation, skillset, and well-managed practice, Dr. Benham ran a very successful orthodontics office (the "Practice").

3. Defendant approached Dr. Benham with promises of growth and efficiency to develop his Practice. Dr. Benham was reluctant, but eventually decided to partner with the Defendants based on these representations. Unfortunately for Dr. Benham, these representations

were false, and the results were vastly different from what Defendants had promised.

4.    The partnership brought Defendants millions in value solely off the work and goodwill of Dr. Benham.  The business relationship entered into between Dr. Benham and Defendants was based on trust.  Defendants maintained control of all the monies, books, and records.  Dr. Benham was still at the forefront of the Practice; treating patients and running the day-to-day operations.  While, in stark contrast, Defendants merely collected the substantial revenues received due to Dr. Benham's skill and handwork.

5.    The work performed by Dr. Benham was premised on the Defendants' duties to properly and accurately maintain the books and records, as Dr. Benham continued to have an ownership interest in the Practice.  Defendants defrauded Dr. Benham of the true accounting numbers, and instead pocketed substantially more than their share for themselves by charging Dr. Benham with fraudulent "costs" disguised as debt payback and business expenses.  This amounts to self-dealing that has significantly harmed Dr. Benham by reducing his profit share of the Practice.

6.    This is the complaint of a multi-million-dollar fraud against Dr. Benham perpetrated and orchestrated by entities worth millions of dollars, their owners, and even their lawyers (who represented Dr. Benham in the Defendants' transactions with him).

7.    This case is essentially a David and Goliath story, with Dr. Benham as David fighting the Goliath of Defendants and their unscrupulous business practices.  Defendants have all the money in the world.  Dr. Benham merely has his good name and reputation.

8.    Defendants have used that good name to their advantage and now seek to steal everything and destroy Dr. Benham's good name for their own benefit.  The evidence will show that Defendants care more about money than any fiduciary duties and duties of good faith and fair

dealing that they undoubtedly owe Dr. Benham.  Defendants will have much to explain to a jury regarding its attempt to misappropriate the entirety of Dr. Benham's business and livelihood. There is no dispute that Defendants breached their fiduciary duties to Dr. Benham.

9.      During the course of Dr. Benham's partnership with Defendants (and unknown to Dr. Benham during the course of that partnership), Dr. Benham learned that Defendants were engaged in fraudulent/negligent accounting and fraudulent/negligent practices in its handling of the Practice. These repeated practices violated basic rules and laws, and constituted thousands of violations annually by Defendants.  This includes the attempt to strip away Dr. Benham's ownership entirely by illegally terminating Dr. Benham from his own Practice.

10.      The extent of Defendants' abhorrent "blame game" against Dr. Benham, includes but is not limited to the following acts and breaches of fiduciary duty:

- b. Providing inaccurate numbers to Dr. Benham;
- b. Failing to properly follow up on a timely basis;
- b. Creating inaccurate reports;
- b. Failing to maintain a system of internal controls over all accounting transactions;
- b. Failing to hold members of the accounting department accountable for their performance;
- b. Failing to focus on (or even consider) the information the accounting department generates;
- b. Failing to ensure members of the accounting department understand and follow proper accounting processes and policies;
- b. Wrongfully terminating Dr. Benham from his own Practice;
- b. Blackballing Dr. Benham; and
- b. Defaming Dr. Benham to his patients.

11.      The only real issue in this case is how much the Defendants owe Dr. Benham.  Dr. Benham will ask this jury for at least $10,000,000.00 in actual damages.

12.      Dr. Benham's claims against Defendants' abuses are the only vehicle through which he can recover against the outlandish, brazen acts of the Defendants.  The Defendants' acts constitute misfeasance of the most egregious sort.  Such actions cannot stand up to even the

slightest degree of scrutiny and the Defendants must be brought to account for their grievous misdeeds.

13.    Additionally, Defendants are preventing Dr. Benham from accessing his patients' dental records.  Dr. Benham is statutorily required to make, maintain, and keep adequate dental records for his patients.  Because of this, with this suit, Dr. Benham seeks a Temporary Restraining Order and Temporary Injunction to prevent Defendants from withholding his patients' records that are statutorily required to be held by Dr. Benham.

14.    Accordingly, Dr. Benham states the following:

## PARTIES

15.    Dr. Benham Dr. Adam Benham is an individual residing in the state of Texas and can be served through the undersigned regarding this petition only.

16.    Defendant Five Point Dental Specialists, Inc. is a Delaware Corporation doing business in the state of Texas and can be served through its registered agent, Capitol Corporate Services, Inc., located at 1501 S. Mopac Expy, Ste 220, Austin, Texas 78746.

17.    Defendant FPDS Benham Sub, LLC is a Delaware limited liability company doing business in the state of Texas and can be served through its registered agent, Capitol Corporate Services, Inc., located at 1501 S. Mopac Expy, Ste 220, Austin, Texas 78746.

18.    Defendant FPDS Benham Holdco, LLC is a Delaware limited liability company doing business in the state of Texas and can be served through its registered agent, Corporation Service Company, located at 251 Little Fall Drive, Wilmington, Delaware, 19808.

## JURISDICTION AND VENUE

19.    Venue is proper in Collin County pursuant to Texas Civil Practice & Remedies Code § 15.002(a)(1) because all or a substantial part of the events or omissions giving rise to the

claims in this case occurred in Collin County.

20.     This Honorable Court has jurisdiction over the underlying lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements.

21.     This Honorable Court has jurisdiction over the parties as each does business in Collin County, Texas.

## DISCOVERY AND RULE 47 STATEMENT

22.     Pursuant to Rule 190.1 of the Texas Rules of Civil Procedure, Dr. Benham intends to conduct discovery in this case under Level 3 (Texas Rule of Civil Procedure 190.4) and requests a scheduling order to be entered by this Honorable Court.  Dr. Benham seeks monetary damages greater than $1,000,000.00.

## FACTUAL BACKGROUND

23.     Dr. Benham and Defendants entered into a partnership together for the purpose of providing orthodontic care to the Collin County community.  Dr. Benham had been providing this premier treatment to the community for many years at the Practice.  The Practice had two locations; 4060 Legacy Drive, Frisco, Texas 75034 and 5341 W University Dr., McKinney, Texas 75071.

24.     Defendant Five Point Dental Specialists, Inc. ("Five Point") approached Dr. Benham in February of 2019 with interest in partnering with Dr. Benham.  Defendants promised Dr. Benham that Defendants would be able to grow the Practice, derive extreme profits, including substantial distributions to Dr. Benham, and then sell the Practice at a substantial markup just years later.  Defendants promised Dr. Benham would be enriched in this process.

25.     Defendants only required that Dr. Benham relinquish control of the Practice and work for the Practice at a reduced salary until Defendants found a suitable buyer.

26.     In reality, these were false promises designed to induce Dr. Benham into the

partnership.  Once the partnership was created, Defendants would only enrich themselves and, in the process, steal millions of dollars from Dr. Benham.  Now, and most egregiously, after Defendants stole millions of dollars from the Plaintiff, Defendants now attempt to steal the entire Practice from Dr. Benham and pay him pennies to the dollar on what the Practice is worth.

27.     The relevant agreements between Dr. Benham and Defendants occurred and were purportedly effective on or about January 1, 2020.

28.     The Asset Purchase and Contribution Agreement ("ACPA") was entered into on January 1, 2020, purporting to sell all of the assets, properties, rights, and interests in Benham Orthodontics, PA ("Benham Ortho") to Defendant FPDS Benham Sub, LLC ("Benham Sub").

29.     The Amended and restated Limited Liability Company Agreement of FPDS Benham Sub, LLC, purportedly also effective on January 1, 2020, stated that Dr. Benham would own 490 Class A units of Defendant Benham Sub and FPDS Benham Holdco, LLC ("Benham Holdco") would own 510 Class B units.  Defendant Benham Holdco was the initial manager of Defendant Benham Sub.

30.     Dr. Benham and Benham Ortho allegedly entered into an Orthodontist Employment Agreement for a term of five (5) years beginning on January 1, 2020.  Benham Ortho, which was controlled by Benham Holdco, could only terminate Dr. Benham's employment for cause.

31.     Almost immediately once the partnership began, Defendants misconduct ensured. Defendants required Dr. Benham to take a fifty percent pay cut at the beginning of the relationship. Defendants also withheld all financial documents from Dr. Benham, which did not allow him to have any idea on how the partnership was doing financially.

32.     Dr. Benham instantly voiced his concerns on how the relationship was going. Defendants discussed the relationship with Dr. Benham and ensured him that everything was going

as planned and the Defendants just needed more time to find the right buyer.  However, this lack of transparency continued.

33.    Dr. Benham would continue to voice his concerns to the Defendants that Dr. Benham was taking a reduced salary, not receiving any distributions, and, contrary to Defendants' representations, was making far less money after the Defendants took over the Practice.

34.    Defendants continued to promise Dr. Benham that Defendants just needed more time to find a potential buyer.  Defendants also stated that the distributions were all going towards Dr. Benham's debt payback to Defendants that arose from the APCA.

35.    From the outset, if the Practice continued as it did before the partnership, Defendants promised Dr. Benham that his debt would be paid back in 2.5 years.  Thereafter, Dr. Benham would begin to receive the sizeable distributions.

36.    To this day, Dr. Benham has not received a single distribution.  Even more egregious, the Practice has doubled in size since the partnership began.  Dr. Benham should have been receiving sizeable distributions for at least two years.

37.    Instead, Defendants have used fraudulent accounting practices to keep Dr. Benham from ever receiving any distributions.  These fraudulent accounting practices allow Defendants to be enriched while Dr. Benham works at a reduced rate and receives nothing in return.

38.    Dr. Benham finally told the Defendants that enough was enough and that he could not continue with the partnership the way it had been operating.  Dr. Benham approached the Defendants in hopes that an agreement could be reached regarding Defendants' wrongful conduct.

39.    Defendants told the Plaintiff that they didn't care about his concerns and that no Judge would feel sorry about the Plaintiff's position of being wrongfully and fraudulently induced into the partnership.

40.     After Plaintiff voiced his concerns, on January 29, 2024, Defendants stated the partnership was being terminated and Defendants would be purchasing Dr. Benahm's equity in Benham Sub for far less than fair market value.

41.     Dr. Benham then received an employment termination letter, purportedly "for cause" from Defendants, through a Dykema attorney.

42.     The Dykema attorney was the exact same attorney that represented Dr. Benham in the underlying January 1, 2020 agreements, as well as Dr. Benham's companies in the leases of the Practice locations.  That same attorney was referred to Dr. Benham to use in the underlying transactions by none other than Jeremy Lusting, the principle of Defendants.

43.     The cause stated in Dr. Benham's termination letter was fraudulent and only done so that Defendants had the ability to purchase Dr. Benham's Practice for whatever amount the Defendants chose.

44.     This termination was compounded by the Defendants then defaming Dr. Benham to the patients by stating he was on a temporary absence due to personal leave.  This is obviously a stark contrast to what Defendants were actually doing; firing Dr. Benham and disallowing him from coming to the Practice locations.

45.     The patients were confused why Dr. Benham was no longer the treating orthodontist.  Defendants then disallowed Dr. Benham from receiving his patients' charts; charts that belong to Dr. Benham pursuant to Texas statutory law.

46.     Dr. Benham has a duty to maintain the dental records of his patients.  Currently, Defendants are preventing him access to those records and putting his Texas dental license at issue by doing so.  Because of this, with this suit, Dr. Benham seeks a Temporary Restraining Order and Temporary Injunction to prevent Defendants from withholding patients' records that are statutorily

required to be held by Dr. Benham.  Dr. Benham also seeks a restraining order and injunction to stop any tortious interference Defendants may attempt regarding his access to his own patients.

## <u>COUNT ONE: BREACH OF PARTNERSHIP AGREEMENT</u>

47.      The foregoing paragraphs are incorporated herein by reference.

48.      Dr. Benham brings this claim for breach of the partnership agreement.  Defendants materially breached the Partnership Agreement by failing to disclose material information, failing to provide periodic reporting or taking measures to protect the assets of the partnership and by failing to develop the partnership.  Dr. Benham has asked Defendnats to comply with their obligations as a partner, but Defendants have refused to do so.  Any further effort to get Defendants to enforce the agreement for the benefit of Dr. Benham and the partnership would be futile.

49.      Dr. Benham's injuries were a natural, probable, and foreseeable consequence of Defendants' breaches, which proximately caused Dr. Benham actual, consequential and special damages in excess of the minimum jurisdictional limits of this Court for which they now sue.

50.      All conditions precedent to Dr. Benham's recovery have been met or occurred. Though not required to do so, Dr. Benham has also asked for accounting information on several occasions.

## <u>COUNT TWO: BREACH OF FIDUCIARY DUTY</u>

51.      The foregoing paragraphs are incorporated herein by reference.

52.      The relationship between Dr. Benham and Defendants was one of trust and confidence.  Defendants possessed the following duties to Dr. Benham: the duty of loyalty and utmost good-faith and care; the duty to act with integrity of the strictest kind; the duty of fair, honest dealing; the duty of full disclosure; the duties of good-faith, fair dealing, loyalty, and fidelity; the duty of candor; the duty to refrain from self-dealing and conspire with one another in

self-dealing; the duty to refrain from hiding or stealing assets; the duty to refrain from usurping partnership opportunities; the duty of full disclosure; the duties of utmost good-faith, fairness, and honesty in dealing; and a duty to account for the partnership's (and Dr. Benham's) assets and property.

53.     Defendants have breached its fiduciary duties, including the duty of care, loyalty, honesty, good faith, and fair dealing to Dr. Benham by, among other things: (1) not taking action to develop and protect the partnership; (2) self-dealing; (3) usurping business opportunities; (4) not investing funds and/or removing previously invested funds; and (5) not keeping Dr. Benham informed about events occurring.  As a result of Defendant's breaches of fiduciary duty, duty of care, duty of honesty, duty of good faith, duty of fair dealings, and duty of loyalty, Dr. Benham is entitled to actual, consequential, incidental, special, and exemplary damages in excess of the minimum jurisdictional limits of this Court for which he hereby sues.

54.     Further, Dr. Benham seeks forfeiture and disgorgement of all benefits that have been received by Defendants as a result of these breaches of fiduciary duties, as well as rescission of any resolutions, agreements, or other acts that result from any breach of fiduciary duty.

## COUNT THREE: FRAUD

55.     The foregoing paragraphs are incorporated herein by reference.

56.     Defendants committed fraud to the detriment of Dr. Benham by making material misrepresentations and omissions to Dr. Benham as set forth above.

57.     When Defendants made the above misrepresentations and omissions, they knew that the misrepresentations were false and the omissions material, or they made said misrepresentations and omissions recklessly and as a positive assertion, but without any knowledge of the truth of the misrepresentations.

58.     Defendants made the above misrepresentations and material omissions with the intention that Dr. Benham rely and act upon them. Dr. Benham acted in reasonable reliance on Defendant's misrepresentations and omissions.

59.     Defendant's actions have caused Dr. Benham actual, consequential, incidental, special, and exemplary damages in excess of the minimum jurisdictional limits of this Court for which he hereby sues.

### COUNT FOUR: NEGLIGENT MISREPRESENTATION

60.     The foregoing paragraphs are incorporated herein by reference.

61.     Defendants negligently misrepresented the matters detailed above in multiple transactions in which Defendants provided the false information for the guidance of Dr. Benham in their business decisions, and Defendants did not exercise reasonable care or competence in obtaining or communicating the information to Dr. Benham.

62.     Dr. Benham has suffered pecuniary loss by justifiably relying on the representations and omissions of Defendants.

63.     Accordingly, Dr. Benham suffered actual, consequential, incidental, special and exemplary damages in excess of the minimum jurisdictional limits of this Court for which he hereby sues.

### COUNT FIVE: CONVERSION, TRESPASS TO CHATTELS, THEFT OF PROPERTY, AND VIOLATIONS OF THE TEXAS THEFT LIABILITY ACT

64.     The foregoing paragraphs are incorporated herein by reference.

65.     Defendants unlawfully appropriated, secured, or stole property belonging to Dr. Benham and to which Dr. Benham had a possessory right.  The unlawful taking was made with the intent to deprive Dr. Benham of the property and was made without Dr. Benham's consent.

66.     Defendants intended to deprive Dr. Benham of his property.

67.     Defendants interfered with Dr. Benham's property, and its interference caused actual damage to the property or deprived Dr. Benham of the use of that property for a substantial period of time.

68.     As a result, Dr. Benham sustained actual damages in an amount that is within the jurisdictional limits of this Honorable Court, for which Dr. Benham now bring this suit.

69.     The wrongful acts of the Defendants set forth in this Count were done maliciously, oppressively, and with the intent to harm Dr. Benham, therefore, Dr. Benham is entitled to punitive and exemplary damages to be ascertained according to proof, which is appropriate to punish and set an example of the Defendants.

## COUNT SIX: UNJUST ENRICHMENT, MONEY HAD AND RECEIVED, AND CONSTRUCTIVE TRUST

70.     The foregoing paragraphs are incorporated herein by reference.

71.     Defendants unjustly received benefits at the expenses of Dr. Benham through their wrongful conduct, including Defendants' nonpayment of partnership proceeds, interference with Dr. Benham's business relationships, and other unfair business practices.

72.     Defendants continue to unjustly retain these benefits at the expense of Dr. Benham. It would be unjust for Defendants to retain any value Defendants obtained as a result of the wrongful conduct.  Dr. Benham is entitled to full restitution of all amounts in which Defendnats have been unjustly enriched at Dr. Benham's expense.

73.     Dr. Benham has been damaged by Defendants due to the breach of a special trust, fiduciary relationship, and fraud.

74.     Defendants will be unjustly enriched by their conduct in keeping Dr. Benham's business and monies that are rightfully owed to Dr. Benham.  A constructive trust must be placed over Dr. Benham's property that has been obtained by Defendants to prevent the unjust enrichment

of Dr. Benham.

### **COUNT SEVEN: VIOLATIONS OF TEX. BUS. ORGS. CODE § 152.210(A)**

75.    The foregoing paragraphs are incorporated herein by reference.

76.    Dr. Benham brings this claim for violations of TEX. BUS. ORGS. CODE § 152.210(a) against Defendants.  Defendants were to adhere to and abide by the provisions of the partnership agreement.  Defendants breached these duties to Dr. Benham.

77.    Accordingly, Dr. Benham suffered harm as a direct and proximate result of Defendants' actions.

### **COUNT EIGHT: VIOLATIONS OF TEX. BUS. ORGS. CODE §§ 152.551 AND 152.552**

78.    The foregoing paragraphs are incorporated herein by reference.

79.    Dr. Benham bring this claim for violations of TEX. BUS. ORGS. CODE §§ 153.551, 153.552 against Defendant. Defendants were to maintain proper books and records and make those books and records available to Dr. Benham upon a reasonable request.  Defendants failed to maintain proper books and records and failed to make those books and records available to Dr. Benham, despite Dr. Benham's multiple requests.

80.    Accordingly, Dr. Benham suffered harm as a direct and proximate result of Defendant.

### **COUNT NINE: PROMISSORY ESTOPPEL**

81.    The foregoing paragraphs are incorporated herein by reference.

82.    Defendants made a promise significant enough to cause Dr. Benham to act on it.

83.    Dr. Benham relied upon the promise and, as such, Dr. Benham suffered a significant detriment.

84.    Relief can come in the form of the Defendants fulfilling those promises.

## COUNT TEN: DECLARATORY JUDGMENT

85.      The foregoing paragraphs are incorporated herein by reference.

86.      Dr. Benham requests that this Court make a declaration that the termination of Dr. Benham was without cause.

87.      Dr. Benham asserts that an award of reasonable and necessary attorneys' fees to Dr. Benham would be equitable and just and, therefore, is authorized by TEX. CIV. PRAC. & REM. CODE § 37.009. Dr. Benham now sues Defendants for his reasonable and necessary attorneys' fees and expenses of litigation for this action and any appeal to an intermediate court or the Texas Supreme Court, as authorized by TEX. CIV. PRAC. & REM. CODE § 37.009.

## EXEMPLARY DAMAGE CAP-BUSTING ALLEGATIONS

88.      The foregoing paragraphs are incorporated herein by reference.

89.      Dr. Benham alleges that the cap on all punitive damages found in the TCPRC 41.008 is not applicable to Dr. Benham's claims in this case because Defendants knowingly and intentionally violated the Texas Penal Code.  Defendants violated numerous sections of the Penal Code and as such that there is no cap on punitive damages.

90.      With the intent of defrauding and harming Dr. Benham, Defendants have engaged in the deception described herein, specifically to perpetrate a fraud and do harm to Dr. Benham, which has destroyed Dr. Benham's property and business interests.  As such, there is no applicable statutory cap on the amount of punitive damages the jury may award Dr. Benham and Dr. Benham thus seeks the highest amount as may be awarded by the jury in this case.

## CONDITIONS PRECEDENT

91.      All conditions precedent to Dr. Benham's right of recovery have been performed, have occurred or have been waived.

## NO WAIVER

92.     By filing this lawsuit, Dr. Benham does not waive or release any rights, claims, causes of action, or defenses, or make any election of remedies that they have, but expressly reserve such rights, claims, causes of action, and defenses.

## USE OF DOCUMENTS

93.     Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, Dr. Benham hereby gives notice that all documents produced by any party to this case will be used at any pretrial proceeding or at the trial of this matter.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

94.     Because the Defendants have damaged and will continue to damage Plaintiff in the manner set forth above, Plaintiff is entitled to a temporary restraining order enjoining the Defendants and any individuals acting in concert with the Defendants.

## THIS COURT SHOULD GRANT A TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

### a. STANDARDS FOR INJUNCTIVE RELIEF

95.     The standards for obtaining a temporary restraining order and preliminary injunction in this Circuit are well-established.  A plaintiff is entitled to a TRO and preliminary injunctive relief if it can establish: (1) a substantial likelihood that it will prevail on the merits of its claims; (2) that it will suffer irreparable injury unless the injunction issues; (3) the threatened injury outweighs whatever damage the proposed injunction may cause the defendant; and, (4) that the injunction would not be adverse to the public interest.  Additionally, a TRO and temporary injunction are ordinarily used to preserve the *status quo* pending a resolution of the claims on the merits.  However, in some cases, like this one, the *status quo* may actually be causing irreparable

injury.  In such cases, a mandatory injunction may issue to alter the *status quo* to prevent further irreparable injury when the law and facts clearly favor the movant.  Here, Dr. Benham seeks to prohibit Defendants from withholding Dr. Benham's patient records, which stops the treatment of those patients and violates Texas statutory law, and prohibit Defendants from continuing to divert, convert, and interfere with Dr. Benham's business and patients through Defendants' fraudulent acts.

**THERE IS A SUBSTANTIAL LIKELIHOOD THAT THE PLAINTIFF WILL PREVAIL ON THE MERITS OF THEIR CLAIMS**

96.    Dr. Benham has asserted, among others, claims for, *inter alia*, conversion, unjust enrichment, fraud, and various other causes of action comprising of the stupefying acts of dishonesty being perpetrated by the Defendants. Based on the elements of these claims under applicable Texas law, the Plaintiff has a substantial likelihood of success of the merits of each of these claims.

*Conversion*

97.    The evidence is clear that the Defendants have converted Dr. Benham's business and patient records.  Conversion is an offense against the possession of property.  *Staats v. Miller*, 240 S.W.2d 342, 345 (Civ. App.--Amarillo 1951), rev'd on other grounds, 243 S.W.2d 686, 150 Tex. 581 (1951).  In fact, it is the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of, or inconsistent with, the other person's rights.  *Waisath v. Lack's Stores, Inc*., 474 S.W.2d 444, 446 (Tex. 1971)  The elements of a claim for conversion are: (1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent

with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property.  *Smith v. Maximum Racing, Inc*., 136 S.W.3d 337, 341 (Tex. App.--Austin 2004, no pet.).  Intent is not an element of conversion; the defendant's state of mind is immaterial, except on the issue of exemplary damages.  *Cargal v. Cargal*, 750 S.W.2d 382, 384 (Tex. App.--Fort Worth 1988, no writ).

98.     Here, on the facts present in this case, Dr. Benham owns and has legal right to monies being withheld by Defendants, as well as Dr. Benham's patient's dental charts.  However, the Defendants have interfered with the Plaintiff's money, business, and patients by and through their nefarious criminal activities.

99.     Further, the evidence clearly demonstrates that the Defendants have unlawfully and without authorization assumed and exercised dominion and control over Dr. Benham's property.  Dr. Benham has demanded that the Defendants cease hijacking the Plaintiff's business and patient records; however, the Defendants have refused.  Accordingly, the Plaintiff has a substantial likelihood of success on the merits of his claim for conversion.

### *Breach of Partnership Agreement*

100.     To establish a breach of contract claim under Texas law, the Plaintiff must prove: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the Defendants; and (4) damages to resulting from that breach.  *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.--Houston [1st Dist.] 1997, no writ).

101.     Here, the partnership agreement is a valid and enforceable contract.  The Defendants have breached the agreement by defrauding Dr. Benham as laid out herein, resulting in injury to Dr. Benham.  Accordingly, Dr. Benham has a substantial likelihood of success on the merits of his claim for breach of the partnership agreement.

**THE PLAINTIFF WILL SUFFER IRREPARABLE INJURY UNLESS THE INJUNCTION ISSUES**

102.    In addition to establishing a clear likelihood of success on the merits of its claims, Dr. Benham must also establish that he will suffer irreparable injury if the TRO and preliminary injunction are not issued.  There are several types of irreparable injury that Dr. Benham will suffer if the Defendants are not preliminarily enjoined.  These injuries are discussed below.

103.    Permanent loss of some of Dr. Benham's business, and possibly Dr. Benham's license, is one type of injury that Dr. Benham will suffer if the Defendants are not enjoined.  The harm from such siphoning of Dr. Benham's money is clear and irreparable.  If Dr. Benham does not get in control of his business operations and monies then he will not be able to operate the Practice.  Once Dr. Benham loses his Practice, Dr. Benham may never be able to recover its current status.  *See United Church of the Medical Center v. Medical Center Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982) (recognizing irreparability of injury resulting from loss of unique property).

104.    Furthermore, Dr. Benham's license is at stake with the Defendants current position of withholding Dr. Benham's patient's dental records from him.  Pursuant to Texas Statutory law, Dr. Benham is required to maintain these records.  Currently, Dr. Benham is not in maintenance of the records and, at any time, Dr. Benham could have to answer to the Dental Board for such records.  This could result in the suspension, or even total loss, of Dr. Benham's dental license.

105.    Additionally, Dr. Benham needs the dental charts of the patients for him to appropriately treat his patients.  By withholding the dental charts, Defendants are interfering with the patients' treatment, to which irreparable and substantial harm will result to Dr. Benham if he is unable to care for his patients adequately and effectively.

106.    Dr. Benham is also at great financial risk because of the Defendants' actions.  While

mere monetary loss is not ordinarily sufficient to establish irreparable harm, it is sufficient "where the potential economic loss is so great as to threaten the existence of the movant's business." *Malone Mortg. Co. Am., Ltd. v. Marinez*, 2002 U.S. Dist. LEXIS 17857 (N.D. Tex. Sept. 23, 2002) (quoting *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1179 (5th Cir. 1989); *see also Doran v. Salem Inn, Inc*., 422 U.S. 922, 932 (1975) (imminent threat of bankruptcy "sufficiently meets the standards for granting interim relief, for otherwise a favorable final judgment might well be useless"); *Nat'l Screen Svc. Corp. v. Poster Exchange, Inc*., 305 F.2d 647, (5th Cir. 1962) (finding no abuse of discretion where court issued preliminary injunction based on movant's claim that "denial of relief would result in the destruction of the business"). *Id.*

107.    Also, there are many employees depending on Dr. Benham's success for their livelihood.  If Defendants conduct continues, these employees will likely lose their jobs.  Even if Dr. Benham is somehow able to stay in operation, their well-trained employees will likely start to move to positions in other companies as a result of the financial situation caused by Defendants' wrongful conduct.  *Id*.  The loss of these employees will only further impede Dr. Benham's ability to rebuild the business it has nurtured for several years.  *Id*.; *see Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States*, 549 F.3d 1079, 1090 (7th Cir. 2008) (finding loss of employees and risk of loss of entire business to be irreparable injury).

108.    Finally, due to the evolving nature of the medical business and niches being created in healthcare reform on a regular basis that are usually controlled by a few top companies, the fact that Dr. Benham is getting his money and Practice stolen by the Defendants means he is unable to pursue new business opportunities, and the losses associated with such missed opportunities are difficult or impossible to accurately quantify.  *See Register.com*, 356 F.3d at 404 (irreparable harm based on loss of business opportunities); *Garth v. Staktek Corp.,* 876 S.W. 2d 545, 549

(Tex.App.—Austin 1994, writ dism'd w.o.j.) ("Lost opportunity to create or gain control of a new market may result in unquantifiable losses for which there is no adequate remedy at law."). For all of these reasons, Dr. Benham will suffer substantial irreparable harm if the Defendants are not enjoined.

## THE BALANCE OF HARMS TIPS DECIDEDLY IN FAVOR OF THE PLAINTIFF

109.    By contrast, the Defendants will not be harmed if the requested injunctive relief is granted. There is no harm to the Defendants by disallowing Defendants from obstructing Dr. Benham's access to his patient records. Furthermore, Defendants should be enjoined from interfering with Dr. Benham in the care of these patients. Defendants will not be harmed for simply allowing Dr. Benham to care for his patients and the community of Collin County. Accordingly, there is virtually no harm to the Defendants in granting the relief requested, while the harm to Dr. Benham (and his patients) if that relief is denied will be significant and likely insurmountable.

## THE PUBLIC INTEREST IS BEST SERVED BY GRANTING THE REQUESTED INJUNCTION

110.    The injunctive relief sought by Dr. Benham is primarily directed at enjoining the Defendants from interfering with Dr. Benham's treatment of his patients. The public has a substantial interest in Dr. Benham, and orthodontists in general, providing care to his patients. Therefore, the requested relief would not be adverse to the public interest. Additionally, to permit the Defendants from benefiting from the theft and fraud Defendants committed against Dr. Benham and his patients is adverse to the public interest because the public has an interest in knowing and understanding that persons may not profit or otherwise benefit from such conduct.

111.    Dr. Benham requests that such temporary restraining order and temporary injunction remain in effect until the trial of this case and permanently. Dr. Benham therefore

prays that this Court enter an order enjoining the Defendants from:

      a.    Withholding patients' dental records from Dr. Benham;

      b.    Altering, deleting, destroying, or tampering with Dr. Benham's patients' dental records;

      c.    Soliciting Dr. Benham's business partners, clients, employees, and contractors;

      d.    Interfering with Dr. Benham's treatment of the patients located at his practices; specifically, 4060 Legacy Drive, Frisco, Texas 75034 and 5341 W University Dr., McKinney, Texas 75071;

      e.    Obstructing or accessing Dr. Benham's practices located at 4060 Legacy Drive, Frisco, Texas 75034 and 5341 W University Dr., McKinney, Texas 75071;

      f.    Contacting such personnel that Defendants know, or reasonably should know, are employees or patients of Dr. Benham;

      g.    Delivering, sharing, distributing, printing or in any other way processing any information that is intended to unlawfully interfere with Dr. Benham's orthodontic practice located at 4060 Legacy Drive, Frisco, Texas 75034 and 5341 W University Dr., McKinney, Texas 75071; and

      h.    Making statements about Dr. Benham that are false, misleading, deceptive, degenerative, or designed to defame Dr. Benham, Dr. Benham's employees, Dr. Benham's contractors, Dr. Benham's business contacts, or Dr. Benham's patients, or any other person or entity that Defendants know, or reasonably should know, to be affiliated with Dr. Benham.

## APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTION

120.    Because the Defendants have damaged and will continue to damage Dr. Benham in the manner set forth above, Dr. Benham is entitled to a temporary injunction enjoining the Defendants and any individuals acting in concert with the Defendants.

121.    Dr. Benham requests that such temporary injunction remain in effect until the trial of this case and permanently.  Dr. Benham therefore prays that this Court enter an order enjoining the Defendants and anyone acting in concert with them from:

      a.    Withholding patients' dental records from Dr. Benham;

      b.    Altering, deleting, destroying, or tampering with Dr. Benham's patients' dental records;

      c.    Soliciting Dr. Benham's business partners, clients, employees, and contractors;

    d.      Interfering with Dr. Benham's treatment of the patients located at his practices; specifically, 4060 Legacy Drive, Frisco, Texas 75034 and 5341 W University Dr., McKinney, Texas 75071;

    e.      Obstructing or accessing Dr. Benham's practices located at 4060 Legacy Drive, Frisco, Texas 75034 and 5341 W University Dr., McKinney, Texas 75071;

    f.      Contacting such personnel that Defendants know, or reasonably should know, are employees or patients of Dr. Benham;

    g.      Delivering, sharing, distributing, printing or in any other way processing any information that is intended to unlawfully interfere with Dr. Benham's orthodontic practice located at 4060 Legacy Drive, Frisco, Texas 75034 and 5341 W University Dr., McKinney, Texas 75071; and

    h.      Making statements about Dr. Benham that are false, misleading, deceptive, degenerative, or designed to defame Dr. Benham, Dr. Benham's employees, Dr. Benham's contractors, Dr. Benham's business contacts, or Dr. Benham's patients, or any other person or entity that Defendants know, or reasonably should know, to be affiliated with Dr. Benham.

## JURY TRIAL

122.    Plaintiff hereby respectfully demands a trial by jury.

## MOTION FOR EXPEDITED DISCOVERY

123.    Dr. Benham respectfully requests expedited discovery in connection with his Original Petition, Application for Temporary Restraining Order, and Temporary and Permanent Injunction.

    a.    Dr. Benham respectfully requests authority to notice oral depositions of the Defendant and non-parties with document requests upon **three days prior** to the appearance date.

    b.    Dr. Benham respectfully requests that documents requested as part of any deposition notice be produced **one day prior** to the commencement of the deposition for purposes of efficiency.

    c.    Finally, Dr. Benham respectfully requests that Defendants be ordered to respond within **four days** to Requests for Production, Interrogatories, and Admissions concerning the conduct described in this petition.

124.    Dr. Benham requires expedited depositions, document production, interrogatory answers, and requests for admissions to develop the details of the Defendants' conduct and his

imminent book release destroying the character of Dr. Benham so that evidence at a temporary injunction hearing can be presented efficiently and effectively, and so that the relief can be targeted precisely.

125.    Unless depositions, interrogatories, documents, and other forms of discovery are permitted on an expedited basis, Dr. Benham may be unable to carry his burden of proof and Defendants' will continue to irreparably harm Dr. Benham

## **PRAYER**

**WHEREFORE, PREMISES CONSIDERED,** Dr. Benham respectfully requests that Defendants be cited to appear and answer herein, as required by law, and that Dr. Benham have the following relief:

(a)    A Temporary Restraining Order as requested herein;

(b)    A Temporary and Permanent Injunction as requested herein;

(c)    All damages in the amount determined to have been sustained by Dr. Benham including, out-of-pocket, consequential, and market damages and lost profit;

(d)    Exemplary and punitive damages as this Honorable Court finds appropriate to deter any future willful conduct;

(e)    Attorney's fees reasonably incurred;

(f)    Pre- and Post-Judgment interest;

(g)    Costs of this lawsuit, including attorneys' fees, experts' fees, and other disbursements; and

(h)    Such other and further relief, at law or in equity, to which Dr. Benham shows himself to be justly entitled.

Respectfully submitted,

**JAMES S. BELL, PC**

/s/ Connor Nash
James S. Bell
State Bar No. 24049314
Email: james@jamesbellpc.com
Connor Nash
State Bar No. 24116809
Email: connor@jamesbellpc.com
2808 Cole Ave.
Dallas, Texas 75204
(214) 668-9000

## <u>DECLARATION OF DR. ADAM BENHAM</u>

My name is Dr. Adam Benham, my date of birth is July 16, 1973, and my address is 2620 Buckwheat Road, Frisco, Texas 75033.  I declare under the penalty of perjury that the following is true and correct.  Executed in Denton County, State of Texas, on the 28th of April 2024.

I have reviewed the foregoing Original Petition, *Ex Parte* Application for Temporary Restraining Order, and Application for Temporary and Permanent Injunction.  For Paragraphs XX, I am personally acquainted with the facts stated therein and testify that they are true and correct.

/s/ Dr. Adam Benham
Dr. Adam Benham

## <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 2.4(b)</u>

This is to certify that, for the reasons explained herein, irreparable harm is likely imminent and there is insufficient time to notify the defendants and their counsel of the filing of this Original Petition, *Ex Parte* Application for Temporary Restraining Order, and Application for Temporary and Permanent Injunction.  Also, notifying the opposing party would impair or annul the Court's power to grant relief because the patients' dental records could be compromised, secreted, or destroyed if notice were given.  Moreover, notice would provide additional opportunity for defendants to interfere with Dr. Benham's patient care.

/s/ Connor Nash
Connor Nash