## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| DR. ADAM BENHAM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:24-cv-00188 |
| | § | |
| FIVE POINT DENTAL SPECIALISTS, | § | |
| INC., et al. | § | |
| | § | |
| Defendants. | § | |

---

### DEFENDANTS' EMERGENCY MOTION FOR REMAND[1]

---

Dated: May 29, 2024

Respectfully submitted,

**CRAWFORD, WISHNEW & LANG PLLC**

By: */s/ Camille Avant*
**Matthew S. Muckleroy**
Texas State Bar No. 24066796
mmuckleroy@cwl.law
**Camille Avant**
State Bar no. 24084397
cavant@cwl.law
**Dallas Flick**
Texas State Bar No. 24104675
dflick@cwl.law

1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

**ATTORNEYS FOR FIVE POINT PARTIES**

---

[1] Pursuant to Local Rule CV-7(l), the Five Point Parties seek expedited relief for this Motion because the Benham Parties are causing imminent, irreparable harm by evading injunctive relief and contempt in the State Action. The Benham Parties frivolously removed to this Court to avoid a modified Application for TRO, a Show Cause Hearing, and a Temporary Injunction Hearing. The briefing schedule set forth in Local Rule CV-7(e) is inadequate as the Five Point Parties' need immediate relief to immediately stop the Benham Parties' wrongful and irreparably harmful actions.

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     RELEVANT FACTUAL BACKGROUND ........................................................ 2

    A.     Benham sells his practice ........................................................................ 2

    B.     The fallout – Benham loses it ................................................................. 5

    C.     Benham's post-employment actions ...................................................... 6

III.    PROCEDURAL HISTORY ................................................................................ 7

IV.     ARGUMENTS & AUTHORITIES .................................................................... 9

    A.     Removal was inappropriate because the Benham Parties
        are not defendants ................................................................................... 9

    B.     The Court lacks jurisdiction because the parties have not
        asserted a federal question ....................................................................11

    C.     Diversity jurisdiction does not exist in this matter to
        alternatively support removal .............................................................. 15

    D.     The Five Point Parties should be awarded their attorneys'
        fees and costs. ........................................................................................ 16

V.      PRAYER .............................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Alley Brothers, LLC v. Krishnan*,
 No. 4:18-cv-742, 2018 WL 8546422 (E.D. Tex. Dec. 13, 2018) ..................................... 17

*Baron v. Strassner*,
 7 F. Supp. 2d 871 (S.D. Tex. 1998) ................................................................................... 12

*Carpenter v. Wichita Falls Indep. Sch. Dist.*,
 44 F.3d 362 (5th Cir. 1995) ............................................................................................... 13

*Caterpillar Inc. v. Williams*¸
 482 U.S. 386 (1987) ........................................................................................................... 12

*Excell. Inc. v. Sterling Boiler & Mech., Inc.*,
 106 F.3d 318 (10th Cir. 1997) ........................................................................................... 17

*F.D.I.C. v. S & I 85-1, Ltd.*,
 22 F.3d 1070 (11th Cir. 1994) ........................................................................................... 10

*Favour Leasing, LLC v. Mulligan*,
 No. 05-13-01000-CV, 2014 WL 4090130
 (Tex. App.—Dallas Aug. 19, 2014, no pet.) ..................................................................... 16

*Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*,
 463 U.S. 1 (1983) ............................................................................................................... 12

*Gully v. First Nat'l Bank*,
 299 U.S. 109 (1936) ..................................................................................................... 13, 14

*Gunn v. Minton*,
 568 U.S. 251 (2013) ..................................................................................................... 10, 12

*Gutierrez v. Flores*,
 543 F.3d 248 (5th Cir. 2008) ............................................................................................. 13

*Humphrey v. Tex. Gas Serv.*,
 No. 1:14-CV-485, 2014 WL 12687831 (E.D. Tex. Dec. 11, 2014) ................................... 13

*Ibarra Consulting Engineers Inc. v. Jacobs Eng'g Grp. Inc.*,
 579 F. Supp. 3d 850 (N.D. Tex. 2022) ........................................................................ 12, 14

*In re Hot-Hed Inc.*,
 477 F.3d 320 (5th Cir. 2007)) ............................................................................................ 15

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
 511 U.S. 375 (1994) ........................................................................................................... 10

*Kramer v. Smith Barney*,
 80 F.3d 1080 (5th Cir. 1996) ........................................................................ 12

*Landry's LLC v. Landry Distilling, Inc.*,
 No. 1-23-cv-00571-RP, 2023 WL 8598131 (W.D. Tex. Dec. 12, 2023) ......................... 15

*Lott v. Pfizer, Inc.*,
 492 F.3d 789 (7th Cir. 2007) ........................................................................ 17

*Martin v. Franklin Capital Corp.*,
 393 F.3d 1143 (10th Cir. 2004) .................................................................... 17

*Moses v. Cantu*,
 No. 4:21-cv-00688-ALM-CAN, 2022 WL 483198 (E.D. Tex. Jan. 13, 2022) ........... 12, 13

*Nahlawi v. Burton-Dabney*,
 No 4:14-cv-609, 2015 WL 139764 (E.D. Tex. Jan. 9, 2015) ................................... 12, 16

*Schols v. Kimball*,
 No. 4:12-cv-146, 2012 WL 3921334 (E.D. Tex. Apr. 27, 2012) ............................... 10

*Shamrock Oil & Gas Corp. v. Sheets*,
 313 U.S. 100 (1941) ..................................................................................... 10

*Stump v. Potts*,
 322 Fed. App. 379 (5th Cir. 2009) ................................................................. 12, 14

## **Statutes**

28 U.S.C. § 1331 ............................................................................................ 10

28 U.S.C. § 1332 ........................................................................................ 10, 16

28 U.S.C. §1441 ......................................................................................... 10, 16

Defendants Five Point Dental Specialists, Inc. ("*FPDS*"), FPDS Benham Sub, LLC ("*FPDS Sub*"), FPDS Benham Holdco, LLC ("*FPDS Holdco*"), and Benham Orthodontics, PA ("*Benham Ortho*" together with FPDS, FPDS Sub, and FPDS Holdco, the "*Defendants*" or "*Five Point Parties*") file this Emergency Motion for Remand requesting the Court remand this lawsuit to state court.

## I.  <u>INTRODUCTION</u>

1.      Plaintiff Dr. Adam Benham ("*Benham*"), and Third-Party Defendants Benham Property Association, LLC ("*BPOA*"), and Benham Orthodontics & Associates, PA ("*Benham Newco*," together with Benham and BPOA, the "*Benham Parties*") removed this matter in a continued effort to flee from the inevitable relief the Five Point Parties will obtain against them. The Benham Parties attempt to avoid looming injunctive relief that would prohibit them from violating various restrictive covenants, using and disclosing the Five Point Parties' confidential information, and causing irreparable injury to the Five Point Parties' by permanently destroying their orthodontics practices.

2.      This matter was originally before the District Court of Collin County, Texas, Cause No. 471-02575-2023 (the "*State Action*"). The Benham Parties filed its Notice of Removal shortly after receiving two-hours' notice from the Five Point Parties that they were going to have a hearing to modify an existing TRO against them. The Benham Parties knew that the state court would immediately lose jurisdiction upon receiving a Notice of Removal which would impede the Five Point Parties from taking any instant action against them.

3.      The Five Point Parties desperately needed—and still need—a modified TRO to stop Benham's continued violations of the existing TRO. The temporary injunction hearing in the State Action is not until June 6, 2024. Without a modified TRO to expand Benham's restrictions,

1

Benham will continue to violate the existing TRO and cause irreparable harm to the Five Point Parties for which money damages are inadequate.

4.      Benham ultimately believes he is above the law—he knows his actions are improper and that he is intentionally violating a court order. On May 21, 2024, days before Benham filed his notice of removal, the court in the State Action entered a Show Cause Order that ordered Benham and BPOA to appear on Juny 6, 2024, to show cause why they should not be adjudged in contempt for violating the existing TRO. To avoid the Show Cause hearing, the modified TRO hearing, and the temporary injunction hearing, Benham filed this sham removal to immediately stay all action and cause the Five Point Parties further harm.

5.      The Benham Parties removed to this district on purported federal question grounds; however, their removal is improper. First, the Benham Parties lack standing to remove the State Action because they are plaintiffs. Second, the Five Point Parties did not assert any federal claims in the State Action and only brought claims under Texas and Delaware law. Thus, there is no federal question pending for this Court to decide, and consequently, the Court lacks jurisdiction over the matter. Accordingly, the Five Point Parties request an immediate remand so they can obtain further injunctive relief against Benham.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Benham sells his practice.

6.      For several years, until January 2020, Benham owned and operated Benham Ortho, which consisted of two (2) orthodontics offices located at 4060 Legacy Drive, Frisco, Texas (the "***Frisco Practice***") and 5341 W. University Dr., McKinney, Texas (the "***McKinney Practice***"). In 2019, Benham decided to sell his practice. As such, in a series of legal agreements, Benham completed the sale of 100% of his interests and 100% of the non-clinical assets of Benham Ortho.

7.      On January 1, 2020, pursuant to an Asset Purchase Agreement ("*APA*") Benham (as "Owner") together with Benham Ortho (as the "Sellers") conveyed Five Point (as "Buyer") certain non-clinical assets ("Purchased Assets") along with certain goodwill and naming rights ("Personal Goodwill"), in exchange for significant consideration ($5,000,000) plus additional "earn-out" compensation payments related to the sale of another $1,400,000.

8.      The APA also contains enforceable restrictive covenants against Benham, which prohibit Benham for five (5) years from January 1, 2020 from engaging the following:

     i.      providing any orthodontic, corrective aligner or dental services or any ancillary services related thereto or related treatment or activities or otherwise competing with the Five Point Parties within a twenty (20) mile radius extending in all directions from the Frisco Practice and the McKinney Practice;

     ii.      soliciting, recruiting, inducing, persuading, or encouraging any person who then is, or at any time during the then preceding twenty-four (24) months from January 1, 2020, was, an employee or independent contractor of the Five Point Parties to modify or terminate his or her employment or engagement or to become employed or engaged by any other "Person" (as defined in the APA);

     iii.      soliciting, recruiting, inducing, persuading, or encouraging any person who then is, or at any time during the then preceding twenty-four (24) months from January 1, 2020 was, (i) a patient of the Benham Ortho, the Frisco Practice, or the McKinney Practice or any of their dentists or orthodontists to terminate or otherwise interfere with his or her patient relationship with Benham Ortho e or to receive any orthodontic, aligner or dental services, treatment or consultation from any other Person; and

     iv.      Disparaging or making derogatory statements (orally, in writing, social media, electronically or otherwise) regarding the Five Point Parties and their respective affiliates.

*See id.* at ¶ 7.2, p. 17.

9.      The APA also includes an express *exclusion* of patient records from the Purchased Assets under the APA, as they are the property of the Practice.

10.      As part of this transaction, on January 1, 2020, Benham also sold and conveyed 100% of his ownership in the Practice to Jeremy R. Lustig, D.D.S., M.S. ("*Lustig*") and Andrew

N. Young, D.D.S. ("***Young***"). Benham executed separate Stock Power certificates evidencing the sale of his ownership shares to Lustig and Young. He also executed a Letter of Resignation certificate, dated January 1, 2020, wherein he "voluntarily resign[ed] all of my positions as an officer and/or director, as applicable of [Benham Orthodontics]."

11.    As of January 1, 2020, the only position Benham held with Benham Ortho was that of a W2 employee paid through Benham Ortho, by virtue of his execution of an Orthodontist Employment Agreement. The Employment Agreement also contains enforceable post-termination obligations of Benham, including the following:

    a.    for two years from February 1, 2024, providing dental services or related ancillary goods or services, including orthodontics services or related treatment or activities, or otherwise competing with Benham Ortho within 20 miles of the Frisco Practice or the McKinney Practice;

    b.    for two years from February 1, 2024, soliciting, recruiting, inducing, persuading, or encouraging any person who then is, or at any time preceding twenty-four (24) months from February 1, 2024 was, an employee or independent contractor of Benham Ortho to modify or terminate his or her employment or engagement or to become employed or engaged by any other person within 20 miles of the Frisco Practice or the McKinney Practice;

    c.    for two years from February 1, 2024, soliciting, recruiting, inducing, persuading, or encouraging any person who then is, or at any time preceding twenty-four (24) months from February 1, 2024 was, (i) a patient of Benham Ortho or any of its dentists or Orthodontists to terminate or otherwise interfere with his or her patient relationship with Benham Ortho or to receive any surgical, aligner or dental services, treatment or consultation from any other person within 20 miles of the Frisco Practice or the McKinney Practice;

    a.    shall not, either directly or indirectly, by or for himself or by, for or in conjunction with any other person, disclose, divulge, or otherwise disseminate to any person any Confidential Information (as defined in the Employment Agreement) or the substance of any Confidential Information without the express prior written consent of Employer;

    b.    shall not, directly or indirectly use or practice or operate under "Benham Orthodontics" or any variants thereof; and

    c.   upon termination of employment Benham shall promptly deliver all computers, keys, telephones, other electronic devices, card keys, credit cards, files, correspondence, memoranda, notes, records, drawings, sketches, plans, lists or documents or other property of or provided to him by Benham Ortho.

12.    Because Benham, through BPOA, owned both the Frisco Practice and McKinney Practice, Benham (through BPOA) also had certain rights as landlord over those locations. The Leases provide that BPOA may access both the Frisco Practice and McKinney Practice only after reasonable written notice to Five Point (the Tenant) of its intent to access; however, BPOA must refrain from accessing any patient records.

**B.**    **The fallout – Benham loses it.**

13.    In November 2023, Benham approached Lustig and Young with demands for additional compensation. Benham expressed his dissatisfaction with his current compensation with Benham Ortho and stated he was entitled to more money. Upon information and belief, Benham had overleveraged himself and had significant debt obligations.

14.    During negotiations of Benham' demands, Benham became belligerent and stated he was offended by their offer, and it was not worthy of a counteroffer. He proceeded to state that if Lustig and Young did not compensate him for the growth of the Practice he would "burn the mother f***er to the ground." Lustig and Young stopped the conversation and offered Benham to speak to the Chairmen of the Board, and thus a subsequent phone conference was set up between Benham and Samuel Hines ("***Hines***") and Jared Rochwerg ("***Rochwerg***") (who served on the Board).

15.    During the conference call, Benham made numerous baseless accusations, levied insults, admitted that he was on and off medications, undergoing therapy, and having extreme personal and financial problems. Benham also demanded to be paid $5,000,000 or else he was going to go on indefinite leave of work. Hines and Rochwerg rejected the demand, and in response,

Benham matter-of-factly stated he was going to "burn this entire mother f***er down," referring to both Benham Ortho and Five Points.

16.     On February 1, 2024, Benham failed to show up to work for his scheduled patient appointments. Fearing Benham would act on his previous demands, including those of violence, Benham Ortho acted and on February 1, 2024, Benham Orth terminated Benham's employment for cause.

17.     However, following his termination, on or about February 3, 2024, Benham attempted to personally access the Frisco Practice. However, as a former employee, Benham was not authorized to enter the Frisco Practice without a legitimate purpose. On February 5, 2024, the owner of a neighboring martial arts studio, Robert Dallas, entered the Frisco Practice's waiting room without authorization and he informed the staff that Benham Ortho was in trouble for prohibiting access to its landlord.

18.     Benham further represented to Five Point's management that he is seeing a psychiatrist and will be seeing a psychiatrist again to adjust his medications, because of his termination and the events leading up to his termination. These representations, along with the instances and issues raised above, now raise genuine, serious concerns by the Five Point Parties about Benham's mental and psychological well-being, and his threats of physical, mental, or psychological abuse or harm to the Benham Ortho employees, patients, and business operations.

**C.     Benham's post-employment actions.**

19.     On April 24, 2024, Benham formed Benham Newco and is providing "orthodontics" at 4060 Legacy Drive, Frisco, Texas 75043 (the "Frisco Practice") in violation of the APA and the Employment Agreement. The Five Point Parties did not learn of this until after May 1, 2024.

20.     On April 26, 2024, Benham tried to change the locks on the Frisco Practice and McKinney Practice despite Five Point not being in default.

21.     On April 29, 2024, Benham showed up at the McKinney Practice and advised the treating doctor that "you have been evicted with a court order." While no "court order" was provided to the treating doctor, he left the location to avoid confrontation.

22.     To date, Benham is operating out of the Friso Practice and McKinney Practice, treating Benham Ortho's patients, and soliciting the Five Point Parties' employees and staff in violation of his agreements. Benham is also contacting several of the Five Point Parties' vendors and demanding they turn over Benham Ortho's patient records. Benham has claimed to the vendors that the records are rightfully his, not Benham Ortho's. It is clear who the records belong to pursuant to the APA and Employment Agreement.

### III.    <u>PROCEDURAL HISTORY</u>

23.     On April 29, 2024, Benham initiated the State Action and brough various claims against Five Point, FPDS Sub, and FPDS Subco including, (i) breaching a partnership agreement (that does not exist), (ii) breach of fiduciary duty, (iii) fraud, (iv) negligent misrepresentation, (v) conversion, trespass to chattels, theft of property, and violations of the Texas Theft Liability Act, (vi) unjust enrichment, money had and received, and constructive trust, (vii) violation of the Tex. Bus. Orgs. Code § 153.210(A), (viii) violation of the Tex. Bus. Orgs. Code §§ 152.551 and 152.552, (ix) promissory estoppel, and (x) declaratory judgment.

24.     On April 29, 2024, the Five Point Parties also initiated claims in the State Action for trespass and threat of bodily harm or harm to property. At that time, the Five Point Parties were unaware that Benham had already initiated a lawsuit and filed its claims under a separate cause.

25.     On April 29, 2024, Benham and the Five Point Parties obtained competing TROs. App pp. 1-7. On April 30, 2024, Benham and the Five Point Parties were served with each party's respective TRO. On April 30, 2024, the Five Point Parties moved to dissolve Benham's TRO.

26.     On May 1, 2024, the Court held a status conference and consolidated the matters into a single matter styled *Dr. Adam Benham v. Five Point Dental Specialist, Inc. et al*., Cause No. 471-02575-2024, in the 471st District of Collin County, Texas. During this conference, the Court was also informed Benham was violating the TRO and the Court informed Benham's attorney that she expected the parties to obey her orders.

27.     On May 2, 2024, Benham and BPOA moved to dissolve the Five Point Parties TRO. The hearing for each party's motion to dissolve was set on May 16, 2024.

28.     On May 2, 2024, Benham was at the Frisco Practice in violation of his TRO. The Five Point Parties then filed a Motion for Contempt and to Show Cause against Benham and BPOA. The State Action judge issued a Show Cause Order, and the hearing is for June 6, 2024 in the State Action. App pp. 8-11.

29.     The temporary injunction in this matter is also set for June 6, 2024. App pp. 12-14.

30.     The Five Point Parties later learned Benham also created a new entity, Benham Newco, which has been treating Benham Ortho's patients from the Frisco Practice and McKinney Practice despite being terminated and in direct violation of the TRO and his restrictive covenants.

31.     Accordingly, on May 16, 2024, the Five Point Parties amended their Petition and added claims for (i) breach of the APA, (ii) breach of the Employment Agreement, (iii) tortious interference with existing and prospective contracts and business relationships, (iv) tortious interference with existing contracts, (v) violation of the Delaware Uniform Trade Secrets Act, and

(vi) constructive trust and accounting as well an application for a modified TRO (the "***Petition***"). The Five Point Parties did not assert any federal question claims.

32.    On May 21, 2024, the State Action judge did not dissolve either party's TRO on the premise that the parties voluntarily agreed to extend the TROs until June 6, 2024. App pp. 15-18.

33.    However, Benham was still violating the original TRO and was also engaging in additional irreparable and harmful acts. Thus, on May 22, 2024 at 1:45 p.m., the Five Point Parties notified the Benham Parties' counsel that they were moving for a modified TRO at 3:45 p.m. before a visiting or other district judge that was available. App pp. 19.

34.    Once the State Action judge learned that the Five Point Parties were moving for a modified TRO based on the Benham's Parties; action, she stated that she would hear the Five Point Parties' request for a modified TRO on May 23, 2024 at 10:00 a.m.

35.    At 3:40 p.m. on May 22, 2024, the Benham Parties' counsel notified the Five Point

36.    federal question grounds under the First Amendment and Federal Trade Commission ("***FTC***")—claims that have not been asserted in this lawsuit.

37.    On May 23, 2024, the Benham Parties mended their Notice of Removal and added a federal question claim under HIPAA—although there is also no HIPAA claim asserted in this lawsuit.

## IV.    <u>ARGUMENTS & AUTHORITIES</u>

### A.    Removal was inappropriate because the Benham Parties are not defendants.

38.    Pursuant to 28 U.S.C. § 1441, a <u>*defendant*</u> may remove a state court action to the federal district court for the district and division within which the action is pending, <u>*provided that the district court possess original jurisdiction*</u>. 28 U.S.C. §1441(a); *see Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-08 (1941) (only a defendant may remove under § 1441). Federal

courts are courts of limited jurisdiction and only possess jurisdiction of claims "arising under the Constitution, laws, or treaties of the United States" or through diversity jurisdiction under 28 U.S.C. § 1332(a), *e.g.,* actions that are between citizens of different states and involve an amount in controversy in excess of $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1331, 1332; *see also Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994); *Gunn v. Minton,* 568 U.S. 251, 257 (2013).

39.     Here, the Benham Parties cannot remove the State Action because they are not the defendants. *See Shamrock*, 313 U.S. at 106–07. The law is well established in that removal is a right exclusively available to defendants. *Id.* Although Benham is a Counter-Defendant, a counter-defendant is not a "defendant" within the meaning of the general removal statute. *See id.*; *F.D.I.C. v. S & I 85-1, Ltd.,* 22 F.3d 1070, 1072 (11th Cir. 1994); *Schols v. Kimball*, No. 4:12-cv-146, 2012 WL 3921334, at *1 (E.D. Tex. Apr. 27, 2012). In addition, drawing from *Shamrock*, district courts nationwide agree that third-party defendants are not defendants within the meaning of § 1441(a) and have no removal standing. *Schols*, 2012 WL 3921334, at *1-2 (citing cases).

40.     It is without question that Benham is the plaintiff and counter-defendant while BPOA and Benham Newco are third-party defendants in this matter. The case caption states as much. In addition, the Benham Parties explicitly identify themselves as plaintiff and third-party defendants in their Notice of Removal as follows:

> This list of parties are as follows:
>
>   a.  Dr. Adam Benham, Plaintiff and Counter-Defendant
>   b.  Benham Property Owners Association, LLC, Third-Party Defendant
>   c.  Benham Orthodontics & Associates, PA, Third-Party Defendant

Dkt. 2, p. 3.

41.     The State Action also lists the Benham Parties as the plaintiff and the Five Point

Parties as the defendants as follows:



Dkt. 2-1, p. 1.

42.     Because the Benham Parties are not the defendants in the State Action, the Court

must remand this matter as the removal does not comply with 28 U.S.C. § 1441.

**B.     The Court lacks jurisdiction because the parties have not asserted a federal question.**

43.     Under 28 U.S.C. § 1331, "federal courts have jurisdiction when the case presents a

federal question that is '(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable

of resolution in federal court without disturbing the federal-state balance approved by Congress.'"

*Ibarra Consulting Engineers Inc. v. Jacobs Eng'g Grp. Inc.*, 579 F. Supp. 3d 850, 854 (N.D. Tex.

2022) (citing *Gunn*, 568 U.S. at 258).

44.     To determine whether federal question jurisdiction exist in a removal action, courts

must look in a _plaintiff's_ "well-pleaded complaint." *Moses v. Cantu*, No. 4:21-cv-00688-ALM-

CAN, 2022 WL 483198, at *2 (E. D. Tex. Jan. 13, 2022). "Under the well-pleaded complaint rule,

federal question jurisdiction depends on whether there appears on the face of the complaint some

substantial, disputed question of federal law." *Id.* (citing *Baron v. Strassner*, 7 F. Supp. 2d 871, 873 (S.D. Tex. 1998)) (internal quotation marks omitted); *see also Nahlawi v. Burton-Dabney,* No 4:14-cv-609, 2015 WL 139764, at *1 (E.D. Tex. Jan. 9, 2015). A case does not arise under federal question, and thus, is not subject to removal, if the complaint on its face "does not affirmatively allege a federal claim and instead *asserts only state law causes of action*." *Moses*, 2022 WL 483198, at *2.

45.    Critically, a federal question cannot be raised in an answer or in the petition for removal. *Stump v. Potts*, 322 Fed. App. 379, 380 (5th Cir. 2009). "Nor will an anticipated federal defense, including a defense of preemption support removal." *Kramer v. Smith Barney*, 80 F.3d 1080, 1082 (5th Cir. 1996); *see Caterpillar Inc. v. Williams¸*482 U.S. 386, 392 (1987) (quoting *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 24 (1983)) ("'[I]f a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law"). Lastly, counterclaims are insufficient to render a case removable. *Stump*, 322 Fed. App. at 380.

46.    Ultimately, the removing party must show that a federal right is "an element, and an *essential one*, of the plaintiff's cause of action." *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995) (emphasis added) (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 111 (1936)). The party that removed an action from state court bears the burden of establishing federal jurisdiction and that removal was proper. *Moses*, 2022 WL 483198, at *1; *see als*o *Humphrey v. Tex. Gas Serv.*, No. 1:14-CV-485, 2014 WL 12687831, at *2 (E.D. Tex. Dec. 11, 2014). However, the removal statute is strictly construed and any doubt as to the propriety of

removal should be resolved in favor of remand. *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008).

47.    Here, even if the Five Point parties were the plaintiffs in the State Action, removal to this district would still be improper because no one has asserted a federal question. The Five Point Parties do not affirmatively allege any federal claim and only asserts state law causes of action. Specifically, they assert the following claims:

i.    trespass (common law);

ii.    threats of bodily assault or injury (common law);

iii.    breach of the APA (common law);

iv.    breach of the Employment Agreement (common law);

v.    tortious interference with existing and prospective contracts and business relationships (common law);

vi.    tortious interference with existing contracts (common law);

vii.    violation of the Delaware Uniform Trade Secrets Act (state statutory claim, 6 Del. C. § 2004); and

viii.    constructive trust and accounting (common law).

Dkt. 2-1, pp. 117-124. These claims rely exclusively on Texas and Delaware law. On the face of the pleadings, the Five Point Parties have not explicitly asserted a federal claim, shown that a federal right is an essential element of any cause of action, nor that a federal question is actually disputed or capable of resolution in a federal court without disturbing the federal-state balance approved by Congress. *Ibarra Consulting*, 579 F.Supp.3d at 854.

48.    Because there are no federal claims asserted in the State Action, it appears that the Benham Parties removed based on (i) an answer they have not filed; (ii) counterclaims they have

not asserted; or (iii) anticipated federal defenses—all of which are improper grounds to establish

a federal question. *See Gully*, 299 U.S. at 111; *Stump*, 322 Fed. Appx. at 380.

49.     In the Notice of Removal, the Benham Parties allege the federal question is based

on the Five Point Parties common law breach of contract claim. Dkt. 1, p. 2. They further state that

"Five Point's claims attempt to restrict the First Amendment rights of Benham and violate the rules

of the Federal Trade Commission and HIPAA." *Id*. Without more, it is impossible to determine

what the Benham Parties are alleging but for suspected counterclaim and/or affirmative defenses.

50.     The Five Point Parties breach of the APA claim is not based on any First Amended

rights, FTC rules, or HIPAA claims. Rather, the breach of the APA claim is based on Benham's

breach of his post-employment restrictive covenants wherein he locked the Five Point Parties out

of its facility, stole and serviced their patients, and disparaged Five Point to improperly solicit their

employees to work directly for Benham—all while the Five Point Parties continue to pay their

employees. The Five Point Parties breach of the APA is nothing more than a common law breach

of contract claim.

51.     The Five Point Parties Petition is thirty-two (32) pages long and there is no

reference to the First Amendment, the FTC, or HIPAA. The Benham Parties are intentionally

misstating the plain language of the Five Point Parties Petition to obtain a removal to federal court

on false pretenses and obstruct the Five Point Parties for procuring expedited injunctive relief in

the State Action.

52.     The Benham Parties also allege the federal question is "Trademark Infringement"

pursuant to the claim selected when it sought removal. *See* Civil Docket as follows:

> Benham v. Five Point Dental Specialists, Inc. et al
> Assigned to:
> Demand: $1,000,000
> Cause: 15:44 Trademark Infringement

The law is established, "removal of a trademark infringement action is improper when a plaintiff does not clearly state he is seeking relief under the Lanham Act." *Landry's LLC v. Landry Distilling, Inc.*, No. 1-23-cv-00571-RP, 2023 WL 8598131, at *2 (W.D. Tex. Dec. 12, 2023) (quoting *In re Hot-Hed Inc.*, 477 F.3d 320, 324 (5th Cir. 2007) (quotation marks omitted).

53.     Assuming the Five Point Parties are plaintiffs (despite all contrary evidence), there is no federal question presented on the face of the Five Point Parties' Petition. Permitting the Benham Parties to create federal claims that do not exist on the face of the pleadings is improper. *Landry's*, 2023 WL 8598131, at *2 ("removal is only proper where a *federal question* is presented on the fact of the plaintiff's properly pleaded complaint").

54.     Accordingly, the Court must remand this matter to this State Action because the Benham Parties improperly removed this matter to federal court.

**C.     Diversity jurisdiction does not exist in this matter to alternatively support removal.[2]**

55.     Diversity jurisdiction requires that no plaintiff be a citizen of the same state as any defendant. *Favour Leasing, LLC v. Mulligan*, No. 05-13-01000-CV, 2014 WL 4090130, at *4 (Tex. App.—Dallas Aug. 19, 2014, no pet.). A natural person is a citizen of a state within the meaning of the diversity statute if he is a United States citizen and is domiciled within the state. *Id.* A

---

[2]     The Benham Entities do not assert diversity jurisdiction as a ground for removal. If necessary, and to preserve their position, the Five Point Parties rebut the existence of diversity jurisdiction herein.

corporation is generally a citizen of every state by which it has been incorporated and of the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1).

56.    A state court action is not removable for diversity jurisdiction if a defendant is a citizen of the state in which the action is brought. 28 U.S.C. § 1441(b). This is referred to as the "forum defendant rule." *Nahlawi,* 2015 WL 139764 at *2. A party must object to the removal based on lack of diversity in or the forum defendant rule can be waived. *Id*.

57.    Although the Benham Parties do not remove diversity jurisdiction, the Five Point Parties state that there is no diversity jurisdiction to not waive the forum defendant rule. The Five Point Parties are citizens of Texas as follows:

> i.    Five Point Dental Specialists, Inc – incorporated in Delaware with its principal place of business in Texas.
>
> ii.    FPDS Benham Sub, LLC – formed in Delaware with its principal place of business in Texas, and its members—Lustig and Young—residing in Texas.
>
> iii.    FPDS Benham Holdco, LLC – formed in Delaware with its principal place of business in Texas, and its sole member—Five Point Dental Specialists, Inc.— in Delaware.
>
> iv.    Benham Orthodontics, PA – formed in Texas with its principal place of business in Texas, and its members—Lustig and Young—residing in Texas.

58.    Because the Five Point Parties are citizens in which this removal is brought, there is no diversity jurisdiction in this matter.

**D.    The Five Point Parties should be awarded their attorneys' fees and costs.**

59.    Under 28 U.S.C. § 1447(c) "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The test for determining whether to awards costs and fees is "whether the relevant case law clearly foreclosed the defendant's basis for removal, not whether the defendant had some special insight into the legislative process." *Lott v. Pfizer, Inc.*, 492 F.3d 789, 794 (7th Cir. 2007); *see Alley*

*Brothers, LLC v. Krishnan*, No. 4:18-cv-742, 2018 WL 8546422, at *6 (E.D. Tex. Dec. 13, 2018) (citing cases and granting award fees when defendants lacked an objectively reasonable basis for removal and removed to further delay state court proceedings). Courts, however, "do not have to find that the state court action has been removed in bad faith as a prerequisite to awarding attorneys' fees and costs." *Martin v. Franklin Capital Corp.*, 393 F.3d 1143, 1146 (10th Cir. 2004) (citing *Excell. Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 322 (10th Cir. 1997).

60.     Benham does not have an objectively reasonable basis for removal and in fact, acted in bad faith in seeking removal of this action. *First*, Benham is not the defendant in this action, and thus has no standing to remove to this district. *Second*, the face of the Five Point Parties' Petition does not affirmatively allege a federal claim, a specific requirement of 28 U.S.C. § 1441. *Third*, nowhere in the pleadings does either party assert a claim under the First Amendment, the FTC, or HIPAA. *Fourth*, as set forth herein, the case law clearly forecloses Benham's basis for removal. And *fifth*, the timing of Benham's Notice of Removal came minutes before the Five Point Parties' hearing on its modified TRO and was sought solely to delay the Five Point Parties need for immediate relief.

61.     Benham's actions are the exact type of actions that warrant recovery of costs and attorneys' fees. Accordingly, the Five Point Parties request its reasonable and necessary costs and attorneys' fees as a result of this removal, including preparing for its modified TRO hearing. The Five Point Parties request briefing on this issue if its request is granted.

## V.     <u>PRAYER</u>

WHEREFORE PREMISES CONSIDERED, Defendants FPDS, FPDS Sub, FPDS Holdco, and Benham Ortho requests the Court remand this matter to the State Action for improper removal

and lack of subject matter jurisdiction, award the Five Point Parties attorneys' fees and costs, and grant all other and further relief to whey they may be entitled.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on May 29, 2024, a true and correct copy of the above and foregoing document was served on all parties of record in accordance with the FEDERAL RULES OF CIVIL PROCEDURE.

*/s/ Camille Avant*
Camille Avant

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned certifies that on May 24, 2024, counsel for the Five Point Parties conferred with counsel for Benham regarding this Motion and the relief sought herein, which he opposes.

*/s/ Camille Avant*
Camille Avant